AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

NOV 0 4 2019

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>LG LM-X220MB Cellular Phone<br>Serial No. 905CYCV0073595<br>IMEI 355292-10-065595-4 | )<br>)<br>)<br>)<br>) | Case No.   19MJ4877 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960; 21 USC 952, 960, 963; | Importation of a Controlled Substance; Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See attached affidavit of Jeffery Porter, HSI Special Agent

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jeffery Porter, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   11/4/19

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Special Agent Jeffery Porter, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic device:

> LG LM-X220MB Cellular Phone
> Serial No. 905CYCV0073595
> IMEI 355292-10-065595-4
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963, as further described in Attachment B.

2.      The requested warrant relates to the investigation and prosecution of Michelle Guadalupe MALDONADO FELIX ("MALDONADO FELIX") for importing approximately 19.22 kilograms of methamphetamine from Mexico into the United States. *See U.S. v. Maldonado Felix*, Case No. 19-CR-3717-CAB (S.D. Cal.) at ECF No. 1 (Complaint). The Target Device is currently located at the Office of the Special Agent in Charge at 880 Front Street in San Diego, CA 92101.

3.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

4.      I have been employed as a Special Agent with Special Agent, Homeland Security Investigations since July of 2017. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5.      During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled

1

substances into and through the Southern District of California.

6.    Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.   At about 10:00 a.m. on August 23, 2019, Officer Ahedo was conducting traffic control in the pre-primary area of the San Ysidro, California port of entry ("POE"). At that time, Officer Ahedo responded to a radio call from CBP Officer Franco that his Narcotics Human Detection Dog (NHDD) alerted to a vehicle on lane 23. CBP Officer Ahedo responded to a red Nissan March with Baja California License Plate AMS316A (the "vehicle"), driven by MALDONADO FELIX. CBP Officer Ahedo received two negative Customs declarations from MALDONADO FELIX.

10.   Per the report of CBP Officer Franco, his NHDD alerted to a trained odor at the undercarriage of the vehicle. The vehicle was scanned with the Z-Portal X-Ray machine. In that scan, Officer Montano observed anomalies in the gas tank and firewall of the vehicle.

11.   While in the secondary area, CBP Officer Canino was designated as the

1 seizing officer for the vehicle. Officer Canino conducted a seven-point inspection of the
2 vehicle and found a total of 38 packages. Officer Canino found 12 packages in the
3 dashboard, which field tested positive for methamphetamine and 26 packages in the gas
4 tank, which field tested positive for methamphetamine. The methamphetamine had a gross
5 weight of 19.22 kilograms.

6      12.     MALDONADO FELIX was placed under arrest for violation of 21 U.S.C. §§
7 952 and 960.  Officer Canino seized the **Target Device** (along with the methamphetamine,
8 the vehicle, and other effects) as incident to the arrest.

9      13.     Agents responded to San Ysidro POE and interviewed MALDONADO
10 FELIX. MALDONADO FELIX was advised of her *Miranda* rights and she agreed to speak
11 with agents.  MALDONADO FELIX stated that her sister's boyfriend, "Lener," whom she
12 met three weeks ago, asked her two days ago to pick up money in the U.S. and bring it
13 back to Mexico. MALDONADO FELIX stated he asked her to pick up $15,000 USD in
14 Los Angeles from a man who owes money to his mom. She stated that the man's son was
15 kidnapped, and he had to pay $3 million pesos for his release. Lener's mom sold a ranch to
16 help him pay for the ransom. The man was paying back Lener's mom in installments. Lener
17 asked MALDONADO FELIX to go because she has a visa. Lener told MALDONADO
18 FELIX that the man wanted to put a GPS on her car since she was transporting his cash.
19 MALDONADO FELIX gave her vehicle to Lener the day before based on the belief that a
20 GPS would be installed.  She said that she was going to be paid $1,000.

21      14.     MALDONADO FELIX stated that she bought the vehicle in January of this
22 year and that she is the only one that uses it. MALDOANDO FELIX stated that she drove
23 two hours from Ensenada and was in line to cross the border for about 1.5 hours.
24 MALDONADO FELIX stated that the vehicle did smell weird.

25      15.     In light of the above facts, MALDONADO FELIX's statements, and my own
26 experience and training, there is probable cause to believe that MALDONADO FELIX was
27 using the Target Device to communicate with others to further the importation of illicit
28 narcotics into the United States based on the facts and circumstances of this case and,

1  particularly, how common use of cell phones are to facilitate drug trafficking.

2      16.   In my training and experience, narcotics traffickers may be involved in the
3  planning and coordination of a drug smuggling event in the days and weeks prior to an
4  event. Co-conspirators are also often unaware of a defendant's arrest and will continue to
5  attempt to communicate with a defendant after their arrest to determine the whereabouts of
6  the narcotics. Based on my training and experience, it is also not unusual for individuals,
7  such as Defendant, to attempt to minimize the amount of time they were involved in their
8  smuggling activities, and for the individuals to be involved for weeks and months longer
9  than they claim. Accordingly, I request permission to search the Target Device for data
10  beginning on January 1, 2019, when MALDONADO FLEIX claimed she initially
11  purchased the car until August 24, 2019, which was the day following MALDONADO
12  FELIX's arrest.

13                                            **METHODOLOGY**

14      17.   It is not possible to determine, merely by knowing the cellular telephone's
15  make, model and serial number, the nature and types of services to which the device is
16  subscribed and the nature of the data stored on the device. Cellular devices today can be
17  simple cellular telephones and text message devices, can include cameras, can serve as
18  personal digital assistants and have functions such as calendars and full address books and
19  can be mini-computers allowing for electronic mail services, web services and rudimentary
20  word processing. An increasing number of cellular service providers now allow for their
21  subscribers to access their device over the internet and remotely destroy all of the data
22  contained on the device. For that reason, the device may only be powered in a secure
23  environment or, if possible, started in "flight mode" which disables access to the network.
24  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
25  equivalents and store information in volatile memory within the device or in memory cards
26  inserted into the device. Current technology provides some solutions for acquiring some of
27  the data stored in some cellular telephone models using forensic hardware and software.
28  Even if some of the stored information on the device may be acquired forensically, not all

of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of MALDONADO FELIX's violations of Title 21, United States Code, Sections 952, 960 and 963

22. Because the Target Device was seized at the time of MALDONADO FELIX's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device. As stated above, I believe that the appropriate date range for this search is from January 1, 2019 through August 24, 2019.

23. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

1

2     I swear the foregoing is true and correct to the best of my knowledge and belief.

3

4                                       _____

5                                         Jeffery Porter
                                        Special Agent, Homeland Security Investigations

6

7     Subscribed and sworn to before me this _____ day of November, 2019.

8

9     _____

10     Hon. Allison H. Goddard
        United States Magistrate Judge

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

        LG LM-X220MB Cellular Phone
        Serial No. 905CYCV0073595
        IMEI 355292-10-065595-4
        ("Target Device")

The Target Device is currently in the possession of Office of the Special Agent in Charge at 880 Front Street in San Diego, CA 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2019 through August 24, 2019:

a.  tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States; .

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to support or contradict Maldonado-Felix's post-arrest statement;

g.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.